DOLEN et al. v. LOBIT et al.    (No. 7617.)

(Court of Civil Appeals of Texas.  Galveston. Oct. 23, 1918.  Rehearing Denied Dec. 19, 1918.)

1. ADVERSE POSSESSION ⟨⟩115(5)—RELATION OF LANDLORD AND TENANT—QUESTION FOR JURY.

In trespass to try title, where defendant claimed title by adverse possession, whether defendant was a tenant of plaintiff *held* for the jury.

2. LANDLORD AND TENANT ⟨⟩7—BASIS OF RELATION—NATURE OF CONTRACT.

The relation of landlord and tenant rests at last upon a contract, and, while it need not be express, there must exist such facts as to the acts, conduct, and intention of the parties as will properly give rise to one by implication.

3. LANDLORD AND TENANT ⟨⟩66(3)—ADVERSE POSSESSION BY TENANT.

Assuming that defendant, an employé of a partnership using land of plaintiff with his consent without payment of rent, was a tenant of the plaintiff, such relation was ended by dissolution of the partnership and abandonment of the land, although the employé was given fences remaining after a prairie fire, where the land was open to the public and unfenced for two years before defendant re-entered and fenced it.

Pleasants, C. J., dissenting in part.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Trespass to try title by L. Lobit and others against I. S. Dolen and others.  Judgment for plaintiffs, and defendants appeal.  Reversed and remanded.

Campbell, Myer, Myer & Freeman, of Houston, for appellants.

Maco & Minor Stewart and R. W. Houk, all of Houston, and Albert J. De Lange, of Galveston, for appellees.

GRAVES, J. Appellees sued appellants in the court below in trespass to try title to recover 597.85 acres of land in the J. W. Moody survey in Harris county, Tex. Among other pleas, the latter set up their claim to the land under the statute of ten years' limitation.

At the close of the evidence, upon motion of appellees, the court peremptorily instructed a verdict in their favor, upon which judgment was duly entered, and appellants present this appeal.

A number of assignments of error are urged, differing in form and manner of statement, but all directed against the court's action in giving the peremptory instruction. The main contention is that the question of whether or not appellants' possession and occupancy of the land was as tenants of appellees, or of those who held under appellees was one of fact for the jury to determine under all of the evidence, and should not have been taken from them by the court. This contention, we think is easily correct, without giving to the evidence what seems to us to be its full force. As we read the statement of facts, it was well-nigh if not indeed conclusively established that no such tenancy existed, and that the independent and adverse possession of the land by the Dolens began early in 1898 and continued uninterruptedly down until the time of the trial; but this court is not asked to render judgment in favor of appellants, their sole complaint being that the court below erred in taking the case from the jury. Accordingly, we merely sustain so much of the various assignments as presents that error, and reverse and remand the cause for another trial.

The issue of tenancy referred to arose out of the following transactions between and among the various persons interested:

In 1889 or 1890, J. C. Hutcheson and I. B. Baker began the conduct of a partnership cattle business near Cypress in Harris county, keeping their cattle and horses in pastures known, respectively, as the H. R. pasture, the Big pasture, the Kelley Hill pasture, and the Pony pasture; the last named being used exclusively for cow ponies. From 1891 or 1892 to about June, 1895, appellant I. S. Dolen worked for the firm of Hutcheson & Baker as their ranch foreman, looking after and caring for their stock in these different pastures; they furnishing him while engaged in their services the Rock Roberts house to live in. In 1890, the 597.85 acres in controversy, together with other lands, was inclosed by Hutcheson & Baker in what was thus known as the Pony pasture, under consent to them that it might be so inclosed from M. Levy and J. Lobit, predecessors of appellees in title thereto; no rent being paid them for the privilege.

Hutcheson & Baker sold all their partnership cattle in 1894, delivered them in the spring of 1895, and immediately dissolved their partnership; both members going out of the cattle business. A few cow ponies may have been left over; but, after thus selling their stock, the firm had but a single transaction, which was to fatten some beeves, closing that out in March, 1896. The firm did not use the Pony pasture, in which was included the land in controversy, after the delivery of their stock in the spring of 1895, and soon thereafter a prairie fire almost completely destroyed its east string of fence and seriously damaged the west string. I. S. Dolen ceased working for the firm of Hutcheson & Baker in June, 1895, and Baker died in June, 1896, just before his death giving Dolen his interest in such wire and posts as this fire had left in the east string of the Pony pasture fence. J. C. Hutcheson, the other member of the firm, subsequently gave Dolen his interest also in the remnants of wire and posts left in this fence after the fire. Neither Hutcheson nor Baker knew what use Dolen intended to make of these remnants of posts and wire, neither gave him consent to take or use any part of the Moody land, neither knew that he had any intention of fencing or using any of it, and, according to the testimony of Dolen, it lay out on the commons, unfenced, and used by the public generally for over two years subsequent to the fire following their discontinuance of its use; but early in 1898 I. S. Dolen, having in the meantime bought 87½ acres in the Roberts survey to the south, and 175 acres in the Gary and Barrow surveys to the east and south of the Pony pasture as constructed and maintained by Hutcheson & Baker, built a substantial three-strand barbed wire fence so as to inclose within it the 597.85 acres in controversy and the 87½ and 175 acre tracts thus purchased by him. While in doing this he used such posts and wire of the old Hutcheson & Baker fence around their Pony pasture as were fit for the purpose and substantially followed its lines along the north and part of the east sides, he extended its south and east strings in order to include the three additional tracts he had purchased, and drew in its west string to the line between the Merritt and the Moody surveys, thus comprising within what was thereafter generally known in that community as "Dolen's pasture," in all 860.35 acres, as against 597.85 acres of the Moody only as used by Hutcheson & Baker.

Dolen testified, and in all essential features he was corroborated by other witnesses, that from and after the fixing up of this

new fence by himself, though never having known who owned it, he intended to and did claim the Moody 597.85 acres openly and notoriously against the world; that he continuously kept, used, and occupied it for the operation of his dairy business until the date of this trial, at all times maintaining his fences and gates·up and closed, and keeping his stock within and other people's stock out of it, having actually lived on the adjoining Gary 160 acres since 1900; that Hutcheson & Baker not only had nothing whatever to do with his so taking possession of and occupying the Moody land, by any agreement with him, or otherwise, but neither of them knew of it.

[1] There are distributed through the statement of facts some circumstances, which, taken and considered apart from their relation to the body of the testimony as a whole, may to some extent tend to impeach the accuracy and the continuity of the above recitation of conditions attending and surrounding Dolen's possession and use of the land in suit, and upon these the appellees lay much stress in their brief; but we think by no indulgence toward them, nor favorable allowance for them, do they conclusively establish that Dolen's possession of the land was a lawful one, begun under Hutcheson & Baker and continued without substantial change by himself, and was not adverse, as is contended in support of the trial court's judgment. Upon the contrary, as suggested at the outset, were that contention here made, this court would be inclined to hold that the record discloses the exact reverse; to say the least of it, the issue was one of fact for the jury.

[2] The relation of landlord and tenant rests at last upon a contract, and, while it need not be express, there must exist such facts as to the acts, conduct, and intention of the parties as will properly give rise to one by implication. Ruling Case Law, vol. 16, p. 541; 1 Woods on Landlord and Tenant, § 1; 24 Cyc. pp. 876, 877, and 882.

[3] If the testimony we have summarized from the evidence could be said to raise an issue of tenancy of Dolen under Hutcheson & Baker at all—since he was merely their hired ranch foreman, looking after the cow ponies they kept upon a tract of land he, during their tenure, neither lived upon, knew who were the owners of, nor in any manner exercised any dominion over other than keeping up the fences—such relation could not have survived the dissolution of their partnership, their consequent abandonment of the use of the land in 1895, and its having lain out on the commons, unfenced, and used by the public generally from that date until Dolen refenced it early in 1898, because any relationship of tenancy.which may have existed between .Hutcheson & Baker and the owners of the land ended with the former's abandonment of its use.

The judgment is reversed, and the cause remanded.

Reversed and remanded.

PLEASANTS, C. J., dissenting in part. See 207 S. W. 964.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes