**LOBIT et al. v. DOLEN et al.　(No. 681.)**

(Court of Civil Appeals of Texas. Beaumont. May 25, 1921. Rehearing Denied June 15, 1921.)

1. **Landlord and tenant ⬾66(2) — Landlord held not charged with notice of change of possession from tenants at will to their former agent.**

Where persons in possession of land as tenants at will discontinued their ranch business, and soon afterwards gave one formerly in actual possession as their agent the wires and posts in a fence constructed by them, and he thereafter rebuilt the fence, using such posts and wires, the landlord *held* not charged with constructive notice that there had been any change in the possession where the tenants never surrendered the possession.

2. **Landlord and tenant ⬾66(3)—Agent of tenants at will held charged with notice of landlord's rights.**

One in actual possession of land for four years as the agent of persons who were merely tenants at will was charged with constructive knowledge of the facts and conditions of their entry, though he did not know to whom the land belonged, as respected his right to hold adversely to the landlord.

3. **Landlord and tenant ⬾66(3)—Agent of tenants at will held to stand in employer's shoes, and not entitled to claim adversely until landlords had notice.**

Where tenants at will of land used in their stock business discontinued their business, but did not surrender possession, but afterwards gave the posts and wire in their fence to their former agent, who had been in actual possession, and he rebuilt the fence, inclosing part of the land with other land of his own, he stood in his former employers' shoes, and occupied the relation of tenant at will to the landlord, and his possession could not be adverse to the landlord until the landlord had actual or constructive knowledge of his adverse claim.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by J. Lobit and others against I. S. Dolen and others. Judgment for defendants, and plaintiffs appeal. Reversed and rendered.

Maco & Minor Stewart and R. W. Houk, all of Houston, for appellants.

Campbell, Myer & Freeman and Sewall Myer, all of Houston, for appellees.

WALKER, J. As applicable to this appeal, we adopt the statement made by Judge Graves on a former appeal of this case (Dolen v. Lobit, 207 S. W. 143), which is as follows:

"Appellees sued appellants in the court below in trespass to try title to recover 597.85 acres of land in the J. W. Moody survey, in Harris county, Tex. Among other pleas, the latter set up their claim to the land under the statute of 10 years' limitation.

"At the close of the evidence, upon motion of appellees, the court peremptorily instructed a verdict in their favor, upon which judgment was duly entered, and appellants present this appeal.

"A number of assignments of error are urged, differing in form and manner of statement, but all directed against the court's action in giving the peremptory instruction. The main contention is that the question of whether or not appellants' possession and occupancy of the land was as tenants of appellees, or of those who held under the appellees was one of fact for the jury to determine under all of the evidence, and should not have been taken from them by the court. This contention, we think, is easily correct, without giving to the evidence what seems to us to be its full force. As we read the statement of facts, it was well-nigh, if not indeed conclusively, established that no such tenancy existed, and that the independent adverse possession of the land by the Dolens began early in 1898 and continued uninterruptedly down until the time of the trial; but this court is not asked to render judgment in favor of appellants, their sole complaint being that the court below erred in taking the case from the jury. Accordingly, we merely sustain so much of the various assignments as presents that error, and reverse and remand the cause for another trial.

"The issue of tenancy referred to arose out of the following transactions between and among the various persons interested:

"In 1889 or 1890, J. C. Hutcheson and I. B. Baker began the conduct of a partnership cattle business near Cypress, in Harris county, keeping their cattle and horses in pastures known, respectively, as the H. R. pasture, the big pasture, the Kelley hill pasture, and the pony pasture; the last named being used exclusively for cow ponies. From 1891 or 1892 to about June, 1895, appellant I. S. Dolen worked for the firm of Hutcheson & Baker as their ranch foreman, looking after and caring for their stock in these different pastures; they furnished him while engaged in their services the Rock Roberts house to live in. In 1890, the 597.85 acres in controversy, together with other lands, was inclosed by Hutcheson & Baker in what was thus known as the pony pasture, under consent to them that it might be so inclosed from M. Levy and J. Lobit, predecessors of appellees in title thereto; no rent being paid them for the privilege.

"Hutcheson & Baker sold all their partnership cattle in 1894, delivered them in the spring of 1895, and immediately dissolved their partnership; both members going out of the cattle business. A few cow ponies may have been left over; but, after thus selling their stock, the firm had but a single transaction, which was to fatten some beeves, closing that out in March, 1896. The firm did not use the pony pasture, in which was included the land in controversy, after the delivery of their stock in the spring of 1895, and soon thereafter a prairie fire almost completely destroyed its east string of fence, and seriously damaged the west string. I. S. Dolen ceased working for the firm of Hutcheson & Baker in June, 1895, and Baker died in June, 1896, just before his death giving Dolen his interest in the wire and posts as this fire had left in the east string of the pony pasture fence. J. O. Hutcheson, the other member of the firm, subsequently gave Dolen his interest also in the remnants of wire and posts left in this fence after the fire. Neither Hutcheson nor Baker knew what use Dolen intended to make of these remnants of posts and wire, neither gave him consent to take or use any part of the Moody land, neither knew that he had any intention of fencing or using any of it, and according to the testimony of Dolen, it lay out on the commons, unfenced, and used by the public generally for over two years subsequent to the fire following their discontinuance of its use; but early in 1898 I. S. Dolen having in the meantime bought 87½ acres in the Roberts survey to the south, and 175 acres in the Gary and Barrow surveys to the east and south of the pony pasture as constructed and maintained by Hutcheson & Baker, built a substantial three-strand barbed wire fence so as to inclose within it the 597.85 acres in controversy and the 87½ and 175 acre tracts thus purchased by him. While in doing this he used such posts and wire of the old Hutcheson & Baker fence around their pony pasture as were fit for the purpose, and substantially followed its lines along the north and part of the east sides, he extended its south and east strings in order to include the three additional tracts he had purchased, and drew in its west string to the line between the Merritt and the Moody surveys, thus comprising within what was thereafter generally known in that community as 'Dolen's pasture,' in all 860.35 acres, as against 597.85 acres of the Moody only as used by Hutcheson & Baker.

"Dolen testified, and in all essential features he was corroborated by other witnesses, that from and after the fixing up of this new fence by himself, though never having known who owned it, he intended to and did claim the Moody 597.85 acres openly and notoriously against the world; that he continuously kept, used, and occupied it for the operation of his dairy business until the date of this trial, at all times maintaining his fences and gates up and closed, and keeping his stock within and other people's stock out of it, having actually lived on the adjoining Gary 160 acres since 1900; that Hutcheson & Baker not only had nothing whatever to do with his so taking possession of and occupying the Moody land,

by any agreement with him, or otherwise, but neither of them knew of it."

On the trial from which this appeal is prosecuted, Dolen's limitation claim was submitted to the jury, and, on their answer, judgment was entered in his favor for the land in controversy. In addition to the statement as made by Judge Graves, we give the following additional fact from this record.

On the 20th of May, 1901, Captain Hutcheson wrote Mr. Levy the following letter:

"Houston, Texas, 5—20—1901.

"Mr. M. M. Levy, Galveston, Texas—Dear Sir: Yours, requesting me to remove fence from your land on which it was constructed by Mr. I. B. Baker, received and contents noted. We are ready to comply with your request within a reasonable time, but as the writer did not have anything to do with the erection of this fence, and does not know exactly how it lies on your land, will you be kind enough to give me a rough plat of the same, so that I shall know exactly how to conform to your wishes? You will recollect that Mr. Baker, who is now dead, was the managing member of the firm, Hutcheson & Baker, in the cattle business, is the reason that I make this request.

"Very truly yours,
"Dic. J. C. H.    [Signed]   **J. C. Hutcheson.**"

Captain Hutcheson knew nothing of the circumstances under which the land in controversy was fenced, and in writing this letter had in mind other lands of Lobit and Levy held under fence by the Hutcheson & Baker partnership. The land in controversy was held under contract made by Mr. Baker with Lobit and Levy, for the Hutcheson & Baker partnership. Mr. Levy replied to this letter as follows:

"Galveston, Texas, May 21, 1901.

"Mr. J. C. Hutcheson, Houston, Texas—Dear Sir: Yours of the 20th inst. duly received. Until we will have made sale, we will not ask you to remove the fence. When we do ask you, we will get the field notes and give same to you. You will understand that we have no desire to molest you, nor cause you any unnecessary expense, but of course if we make sale, it will be necessary to remove the fence, unless the party buying will be willing to allow you to keep it there.    [Signed]   M. M. Levy."

We are unable to distinguish this case on its facts from West Lumber Co. v. Sanders, 225 S. W. 828, an opinion by this court on which the Supreme Court denied writ of error.

[1] Hutcheson & Baker were tenants at will of Lobit and Levy. As such tenants, they never surrendered the possession thus given to their landlords, though they dissolved their partnership, and did not repair the fences after they were partly destroyed by fire. There was never a time, subsequent to their original entry, in which they could

231 S.W.—53

have been called trespassers had they entered on this land. Lobit and Levy did not know that the partnership had abandoned the possession. In fact, they thought that Hutcheson & Baker, as such tenants at will, were holding possession in their name during all these years. Nor are the circumstances in this record sufficient to give them constructive notice of that fact. During the years that Hucheson & Baker held the land, Dolen was their agent, actually in the possession and control of the land. Had Lobit and Levy gone upon the land during the years 1891 to 1895, they would have found Dolen living near their land, and in actual possession as agent of their tenants. Had they gone there during the years 1895 to 1898, they would have found him living in the same house, and their land still under the fence placed there by their tenants, though in bad repair. Had they gone there during the years 1898 to 1912, when this suit was filed, they would again have found him in possession, holding and pasturing stock on their land, branded as the cattle of their former tenant, Hutcheson. In our judgment, there is not a circumstance in this record, in the absence of actual notice, to give Lobit and Levy notice of the adverse claim of Dolen, even had they gone upon this land in person. In view of the fact that Hutcheson & Baker had the right of entry, and that Lobit and Levy recognized them as their tenants, every circumstance of Dolen's holding could have been understood by them as being in subordination to their title.

[2, 3] What was Dolen's relation to Lobit and Levy? As he was in actual possession of their land for four years as the agent of Hutcheson & Baker, he was vested with constructive knowledge of all the facts and conditions of their entry. The fact that he did not know to whom the land belonged does not aid his limitation claim. Having been in possession for four years, under those who did know, he is vested with knowledge of that fact. As it affected Lobit and Levy, his holding during the years 1891 to 1895 was of the same character as the holding of Hutcheson & Baker. He "stood in their shoes." This relation—in law, that of tenancy—having once existed, he could not make his personal entry of 1898 hostile, without visiting upon Lobit and Levy actual or constructive knowledge of his adverse claim. On the facts of this record, that notice was not shown. It seems to us clear that Dolen's claim does not bring him within the well-recognized rule:

"So long as the relation of landlord and tenant exists, the tenant cannot acquire an adverse title as against his landlord. It is equally well settled that one who enters as a tenant is not, merely because of that fact, precluded from subsequently holding adversely to his landlord. To do so, however, it is necessary

to renounce the idea of holding as tenant, and to set up and assert an exclusive right in himself. It is also essential that the landlord should have actual notice of the tenant's claim, or that the tenant's acts of ownership should be of such an open, notorious, and hostile character that the landlord must have known it." 1 R. C. L. 747.

In our judgment, there was privity between the holding of Hutcheson & Baker and Dolen, not only on the facts just discussed, but also by reason of the fact that he entered upon the land for the purpose of repairing the fence erected and used by them under their tenancy contract. While it is true that they did not recognize that the placing of this fence on the land made it a part of the realty, and, in giving it to Dolen, did not intend to give him a part of or interest in the realty, yet, under their tenancy, they had the right of entry, and this right they gave to Dolen when they gave him the fence. Under this right, thus given him, Dolen's entry was lawful. Whatever may have been his secret purpose in taking possession of the land, the law made him privy to this tenancy contract, and fixed his status as that of tenant at will. West Lbr. Co. v. Sanders, supra, and authorities therein cited. It follows then that his claim could not become hostile to the owners until he brought himself within the rule above quoted from 1 R. C. L. 747.

As he did not do this, the court erred in not instructing a verdict for appellants.

In making this holding, we recognize that we are in direct conflict with the holding of the Court of Civil Appeals for the First Supreme Judicial District on the former appeal of this case, but, believing that this case is on "all fours" with our disposition of West Lumber Co. v. Sanders, we are left no alternative but to reverse the judgment of the trial court, and here render judgment for appellant. It is accordingly so ordered.