## DOLEN et al. v. LOBIT et al.
### (No. 544–3688.)

(Commission of Appeals of Texas, Section A. June 12, 1924.)

**1. Landlord and tenant ☞66(1)—Whether defendant employed by plaintiffs' tenants so as to be precluded from claiming possession adversely to plaintiffs held for jury.**

In trespass to try title, in which plaintiffs claimed that defendant could not have acquired title by adverse possession because he was in possession as range foreman for plaintiffs' tenants, question of whether employment of defendant by tenants was contemporaneous with tenancy so as to preclude defendant from claiming that his tenancy was adverse as to plaintiffs *held* for jury.

**2. Appeal and error ☞999(1)—Findings on issues of fact not disturbed.**

The Court of Civil Appeals was not authorized to substitute its findings for those of jury.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by J. Lobit and others against I. S. Dolen and others. Judgment for defendants was reversed and judgment rendered by the Court of Civil Appeals (231 S. W. 831), and defendants bring error. Judgment of Court of Civil Appeals in so far as it rendered judgment for plaintiffs reversed, and cause remanded.

Campbell, Myer & Freeman, of Houston, for plaintiffs in error.

R. W. Houk, of Houston, and Maco & Miner Stewart, of Galveston, for defendants in error.

BISHOP, J. Defendants in error filed suit in the district court of Harris county in trespass to try title to recover 597.85 acres of land a part of the J. W. Moody survey in that county. Plaintiffs in error, by their answer, claimed this land under the 10-years' statute of limitation. The case has been twice tried in that county. On the first trial the court, at the close of the evidence, instructed a verdict in favor of defendants in error upon which judgment was rendered. The Court of Civil Appeals for the First Supreme Judicial District reversed this judgment and remanded the cause, holding that the question as to whether plaintiffs in error entered into possession of the land as tenants of defendants in error was one of fact for the jury under all the evidence. 207 S. W. 143, 964. Upon the second trial special issues were submitted to the jury, and, on findings of all issues submitted favorably to plaintiffs in error, the trial court rendered judgment in their favor. From this judgment defendants in error appealed to said Court of Civil Appeals for the First District, and, the cause having been transferred to the Court of Civil Appeals for the Ninth Supreme Judicial District, judgment was reversed and rendered, that court holding that under the evidence, as a matter of law, plaintiff in error I. S. Dolen, having been an agent and employé of Hutcheson & Baker, "stood in their shoes," and that, as the relation of Hutcheson & Baker with defendants in error had been that of landlord and tenant, Dolen could not make his personal entry thereafter "hostile, without visiting upon Lobit and Levy actual and constructive knowledge of his adverse claim," and also that "there was privity between the holding of Hutcheson & Baker and Dolen * * * by reason of the fact that he entered upon the land for the purpose of repairing the fence erected and used by them under their tenancy contract." The reason given for this holding is:

"While it is true that they did not recognize that the placing of this fence on the land made it a part of the realty, and, in giving it to Dolen, did not intend to give him a part of or interest in the realty, yet, under their tenancy, they had the right of entry, and this right they gave to Dolen when they gave him the fence. Under this right, thus given him, Dolen's entry was lawful. Whatever may have been his secret purpose in taking possession of the land, the law made him privy to this tenancy contract, and fixed his status as that of tenant at will."

The Court cites West Lbr. Co. v. Sanders (Tex. Civ. App.) 225 S. W. 828, as controlling. Lobit v. Dolen (Tex. Civ. App.) 231 S. W. 831.

On both trials in the district court the evidence was practically the same. The opinions of the Courts of Civil Appeals are directly in conflict, and the statement of the case by the court in the first appeal is adopted by the Court of Civil Appeals for the Ninth District, which is, in part, as follows:

"The issue of tenancy referred to arose out of the following transactions between and among the various persons interested: In 1889 or 1890, J. C. Hutcheson and I. B. Baker began the conduct of a partnership cattle business near Cypress, in Harris county, keeping

their cattle and horses in pastures known, respectively, as the H. R. pasture, the big pasture, the Kelley hill pasture, and the pony pasture; the last named being used exclusively for cow ponies. From 1891 or 1892 to about June, 1895, appellant I. S. Dolen worked for the firm of Hutcheson & Baker as their ranch foreman, looking after and caring for their stock in these different pastures; they furnishing him while engaged in their services the Rock Roberts house to live in. In 1890, the 597.85 acres in controversy, together with other lands, was inclosed by Hutcheson & Baker in what was thus known as the pony pasture, under consent to them that it might be so inclosed from M. Levy and J. Lobit, predecessors of appellees in title thereto; no rent being paid them for the privilege.

"Hutcheson & Baker sold all their partnership cattle in 1894, delivered them in the spring of 1895, and immediately dissolved their partnership; both members going out of the cattle business. A few cow ponies may have been left over; but, after thus selling their stock, the firm had but a single transaction, which was to fatten some beeves, closing that out in March, 1896. The firm did not use the pony pasture, in which was included the land in controversy, after the delivery of their stock in the spring of 1895, and soon thereafter a prairie fire almost completely destroyed its east string of fence and seriously damaged the west string. I. S. Dolen ceased working for the firm of Hutcheson & Baker in June, 1895, and Baker died in June, 1896, just before his death giving Dolen his interest in such wire and posts as this fire had left in the east string of the pony pasture fence. J. C. Hutcheson, the other member of the firm, subsequently gave Dolen his interest also in the remnants of wire and posts left in this fence after the fire. Neither Hutcheson nor Baker knew what use Dolen intended to make of these remnants of posts and wire, neither gave him consent to take or use any part of the Moody land, neither knew that he had any intention of fencing or using any of it, and, according to the testimony of Dolen, it lay out on the commons, unfenced, and used by the public generally for over two years subsequent to the fire following their discontinuance of its use; but early in 1898 I. S. Dolen, having in the meantime bought 87½ acres in the Roberts survey to the south, and 175 acres in the Gary and Barrow surveys to the east and south of the pony pasture as constructed and maintained by Hutcheson & Baker, built a substantial three-strand barbed wire fence so as to inclose within it the 597.85 acres in controversy and the 87½ and 175 acre tracts thus purchased by him. While in doing this he used such posts and wire of the old Hutcheson & Baker fence around their pony pasture as were fit for the purpose and substantially followed its lines along the north and part of the east sides, he extended its south and east strings in order to include the three additional tracts he had purchased, and drew in its west string to the line between the Merritt and the Moody surveys, thus comprising within what was thereafter generally known in that community as 'Dolen's pasture,' in all 860.35 acres, as against 597.85 acres of the Moody only as used by Hutcheson & Baker.

"Dolen testified, and in all essential features he was corroborated by other witnesses, that from and after the fixing up of this new fence by himself, though never having known who owned it, he intended to and did claim the Moody 597.85 acres openly and notoriously against the world; that he continuously kept, used, and occupied it for the operation of his dairy business until the date of this trial, at all times maintaining his fences and gates up and closed, and keeping his stock within and other people's stock out of it, having actually lived on the adjoining Gary 160 acres since 1900; that Hutcheson & Baker not only had nothing whatever to do with his so taking possession of and occupying the Moody land, by any agreement with him, or otherwise, but neither of them knew of it."

We think the court erred in holding that, as a matter of law, Dolen's relation to defendant in error Lobit and Levy should be construed to be that of tenant to landlords by reason of his employment by Hutcheson & Baker.

M. M. Levy testified by deposition that he, for Mr. Lobit and himself, gave Hutcheson & Baker permission to use this land and that letters then held by his attorney would more fully explain their relations with Hutcheson & Baker, one of which was from Hutcheson & Baker. He did not state when this permission was given. However, there was introduced in evidence a letter signed "I. B. Baker, for Hutcheson & Baker," and addressed to M. M. Levy, of date July 27, 1895, which, in so far as it relates to such permission, is as folows:

"In reference to the lands that Hutcheson and Baker have under fence by virtue of running their fence from the Abe Roberts N. E. corner to the nearest point on the railroads will say: That this was done in order to fence our lands as cheaply as possible, having the privilege of joining the R. R. road. Should any of the J. W. Moody be inclosed under this fence on the south side of the railroad we are not claiming it, nor do we propose to claim adversely to you from the fact that we know that you are the rightful owners, we would be pleased to continue our fence according to the understanding I had with you in Galveston the other day until such time you may sell or desire the fence removed, when at your request we will do so. Hoping this is satisfactory, we are."

[1, 2] The jury on special issues found that I. S. Dolen was not employed by the estate of I. B. Baker, and that his employment by J. C. Hutcheson terminated when he went to Cypress in 1892. Mrs. I. S. Dolen testified that they moved up there on June 5, 1892, and that from that time until along in 1895 her husband was ranch manager for Hutcheson & Baker. If I. S. Dolen ceased working for Hutcheson & Baker in June, 1895, as stated by the Court of Civil Appeals, the trial court or jury under this evidence would be warranted in finding that

Dolen was not employed by Hutcheson & Baker, or by Hutcheson, or the estate of Baker, at any time after Hutcheson & Baker acknowledged tenancy under Lobit and Levy, or was by them permitted to occupy this land. And, even if it could be said that his employment during the time that Hutcheson & Baker was holding as tenants at will would create the relation of landlord and tenant between him and defendants in error, and estop him from claiming adversely to them without first bringing home to them notice of his adverse claim, which we seriously doubt, still the evidence raises the issue as to whether Dolen's employment was contemporaneous with the tenancy of Hutcheson & Baker. The Court of Civil Appeals was not authorized to substitute its findings for that of the trial court or jury on issues of fact.

The Court of Civil Appeals also held that the fence was part of the realty, and that, though Hutcheson & Baker did not realize this, the gift to him of the fence and his entry under this gift was one under their tenancy at will, and that he was therefore estopped to claim adversely until he had repudiated this tenancy and the defendants in error had notice of such repudiation, and cites West Lbr. Co. v. Sanders, above, as sustaining this holding. There is evidence, however, that the fence was practically destroyed by fire, and that the land "lay out on the commons, unfenced and used by the public generally for over two years subsequent to the fire following * * * discontinuance of its use" by Hutcheson & Baker, and that the remnants of wire and posts which had been used in the fence were given to Dolen by Hutcheson & Baker. Under the evidence the issue as to whether remnants of wire and posts, which did not constitute part of the realty, or, whether a fence constituting part of the realty, was given, and whether the entry of Dolen was under this gift, was by the trial court determined in favor of plaintiffs in error, and the appellate court was not authorized to hold otherwise, and thereby infringe upon the exclusive right of the trial court to decide an issue on conflicting evidence.

In the case of West Lbr. Co. v. Sanders, one Kent was a tenant at will of the owner of 111 acres of land, and owned a house thereon, which he occupied, and the rails used to inclose a field of 13 acres which he cultivated situated thereon. He moved off said premises in July, 1900, and the following September sold to one Placker, for a consideration of $75 said house and rails. In December, 1900, Placker, by tenant, entered upon said land occupying said house as a residence, using and cultivating said 13 acres, and claiming the entire tract of 111 acres, as did also those claiming under him. The owner did not know and had not been advised that either Placker, or those claiming under him claimed the land. The court held that Placker and Sanders, who claimed title under him, were estopped from claiming adversely to the owner, as there was never any repudiation of the tenancy contract by Kent, or any one under whom Sanders claimed. Here it was clear that Placker entered upon the premises under his contract of purchase of the house and fence which were part of the realty. The case was tried upon an agreed statement of facts so showing, and there was no issue of fact involved.

It will be presumed that the Court of Civil Appeals reversed the judgment of the trial court on a finding on the sufficiency of the evidence over which it had final appellate jurisdiction, and we recommend that the judgment of that court, in so far as it rendered judgment for defendants in error be reversed, and the cause remanded to the district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission of Appeals on the question discussed in its opinion.