### BUTLER v. DUFFEY et al. (No. 9565.)

(Court of Civil Appeals of Texas. Dallas. Oct. 30, 1926.)

**1. Trial &marker;75—Failure to present motion to strike abstract of title, not filed in time, held not waiver of right to exclusion of evidence of title.**

Failure to present motion to strike abstract of title as not filed by plaintiffs within 20 days after service of notice of demand *held* a waiver of motion, but not of right on proper objection, to exclusion of evidence of plaintiffs' claim or title because of noncompliance with demand.

**2. Trespass to try title &marker;40(7)—Statutory requirements as to filing of abstract of title, exclusion of evidence, and confinement of documentary evidence to matters in abstract filed, are mandatory (Rev. St. 1925, arts. 7376–7379).**

Rev. St. 1925, arts. 7376–7379, are mandatory, not only as to filing abstract of title in manner, form, and time required, but as to exclusion of evidence of claim or title of plaintiffs not filing abstract and confinement of documentary evidence of title to matters contained in abstract filed.

**3. Appeal and error &marker;499(3)—Bill of exception, not stating that appellant objected to admission of evidence complained of, is insufficient.**

Bill of exception to admission of documentary evidence of plaintiffs' title, in trespass to try title, on ground that abstract of title was filed over a year after service of notice to file, *held* insufficient, in absence of statement that defendant objected to admission of such evidence.

**4. Evidence &marker;317(4)—Testimony that one not before court said she made deed to plaintiffs' ancestor held inadmissible as against claimant by adverse possession.**

In trespass to try title, testimony of attorney for plaintiff's ancestor, as to statement of one not before court, that she had deeded land to such ancestor, *held* inadmissible to show plaintiffs' title as against one claiming by adverse possession.

**5. Estoppel &marker;98(1)—Admission against interest operating as an estoppel is inadmissible against parties not claiming under party making it.**

Admission against interest does not convey title, but shuts off otherwise successful defense to claim of title by one estopped by such admission, communicated to and acted on by another, to gainsay it to latter, and evidence thereof is inadmissible as against others not claiming by, through, or under party making it.

**6. Evidence &marker;317(4)—Testimony that alleged grantor said she made deed to plaintiffs' ancestor held inadmissible as hearsay.**

In trespass to try title, testimony of attorney for plaintiff's ancestor, that latter's alleged grantor told him that she had made deed to such ancestor, *held* inadmissible as hearsay, in view of admission of witness that he never saw deed, and knew nothing about it except what he hold him.

**7. Witnesses &marker;140(7)—Plaintiffs' testimony as to conversation between their deceased ancestor and defendant held incompetent.**

In trespass to try title, plaintiffs' testimony as to conversation between their deceased ancestor and defendant claiming by adverse possession *held* improperly admitted.

**8. Appeal and error &marker;1050(1)—Defendant, objecting to part of testimony improperly admitted, cannot urge error, where similar testimony was admitted without objection.**

Defendant, objecting to only part of plaintiffs' testimony as to conversation between their deceased ancestor and defendant, cannot urge error therein, where part of conversation not objected to was practically the same.

**9. Appeal and error &marker;1010(1)—Trial judge's finding, supported by evidence, against defendant's claim of title by adverse possession, is conclusive.**

Trial judge's finding, supported by sufficient evidence, against defendant, on issue of his claim of title by adverse possession, is conclusive on appellate court.

**10. Adverse possession &marker;85(4)—Evidence held to show that defendant, claiming by adverse possession, was tenant at will.**

In trespass to try title, evidence *held* sufficient to show that defendant, claiming title by adverse possession, occupied land in subordination to title, and with at least implied assent, of plaintiff's ancestor, and hence was a tenant at will.

**11. Landlord and tenant &marker;65—One obtaining possession by owner's permission is estopped to question title of his heirs.**

One obtaining possession of land by owner's permission is estopped to question title of latter's heirs at law.

Appeal from District Court, Rains County; J. M. Melson, Judge.

---

Action by Mrs. Ada Duffey and others against R. P. Butler. Judgment for plaintiffs, and defendant appeals. Affirmed.

W. W. Berzett and H. D. Garrett, both of Emory, for appellant.

McMahan, Doheney & Dial, of Greenville, for appellees.

VAUGHAN, J.   At a former term of this court, to wit, on April 29, 1926, an opinion was handed down and judgment rendered reversing and remanding the judgment of the trial court rendered in this cause, and this cause is now before us on appellees' motion for rehearing.

This suit was filed in the trial court on the 15th day of November, 1921, by appellees, Mrs. Ada Duffey, a feme sole, S. P. Cain, and Mrs. Lela Ballew, joined by her husband, J. W. Ballew, against appellant, R. P. Butler, in trespass to try title to 100 acres of land, a part of the John Winston survey located in Rains county, Tex., to which petition appellant answered by way of general denial, plea of not guilty, and the 10 years' statute of limitation.   Trial of the cause was had on the 5th day of December, 1924, before the court without the aid of a jury, which resulted in a judgment for appellees and the prosecution of this appeal by appellant.

The material facts established by the evidence will be stated in the discussion of the propositions presented by appellant in support of his appeal.   Therefore a general finding of fact will not be made.

[1, 2] Appellant, in seasonable time and in due form, demanded of appellees the filing of an abstract in writing of the claim or title to the 100 acres of land in question upon which they relied.   Appellees filed an abstract of title, but not until after the expiration of one year from the date of the service of the notice requiring the filing of same.   Appellant, on the 3d day of December, 1924, filed his motion to strike from the papers in the case the abstract of title filed by appellees on the ground that same was not filed within the time required by law, to wit, within 20 days after the service of the notice of the demand for the filing of the abstract of title.   This motion was not called to the attention of the court, and therefore no ruling was had on same.   The failure to present the motion was a waiver thereof; however, not a waiver of the right, by proper objection when offered, to have excluded evidence of the claim or title of appellees to the tract of land involved, based upon failure of appellees to comply with the demand for the filing of an abstract of title.   Article 7376, Revised Civil Statutes 1925 (formerly article 7743) provides, that:

"After answer filed, either party may, by notice in writing duly served on the opposite party or his attorney of record, not less than ten days before the trial of the cause, demand an abstract in writing of the claim or title to the premises in question upon which he relies."

Article 7377, Id. (formerly article 7744) relating to the time in which abstract shall be filed, requires that same "shall be filed with the papers of the cause within twenty days after the service of the notice, or within such further time as the court on good cause shown may grant," and, to enforce compliance therewith, provides that, "in default thereof, no evidence of the claim or title of such opposite party shall be given on trial."   Article 7378, Id. (formerly 7745), states what the abstract mentioned in the preceding articles shall contain, including among others the following provision:

"If such unrecorded instrument be lost or destroyed, it shall be sufficient to state the nature of such instrument and its loss or destruction."

Article 7379, Id. (formerly 7746), authorizes the amendment of an abstract of title under permission of the court, and contains the provision that "in all cases the documentary evidence of title shall at the trial be confined to the matters contained in the abstract of title."

There can be no question that, from the very language used, the observance of the provisions of said articles is not only mandatory as to the filing of the abstract of title in the manner and form and in the time therein required, but that there must be a strict compliance with the provisions of said articles with reference to the effect that is visited under the law for the failure to file the abstract within the time required, viz.: (1) That failure to file the abstract within the proper time will deny the party the right to introduce any evidence of his claim or title to the property involved; and (2) that, having filed an abstract, in reference to documentary evidence of title, he will be confined to the matters contained in the abstract as filed.   The wisdom of these provisions of the law is so apparent that a logical discussion for the purpose of demonstrating the reasonableness as well as the value thereof would perhaps rather tend to confuse than to elucidate.   Davis et al. v. Cisneros et al. (Tex. Civ. App.) 220 S. W. 298.

[3] Appellant's bill of exception No. 1 refers to a certified copy of patent to the John Winston survey and the last will and testament of James Hooker being offered in evidence by appellees, and, while it is apparent therefrom that appellant had in mind to object to the introduction of said instruments in evidence because of the failure of appellees to comply with his demand to file abstract of title within the time required by law, yet, in order to give said bill that effect, it will be necessary to supply a material omission, to wit, "that appellant objected to

the introduction of said instruments in evidence," there being nothing in the language of the bill to indicate that, when said instruments were offered in evidence, appellant objected to same being offered and read in evidence because of the failure of appellees to comply with demand for the filing of an abstract of title. There is no doubt that it was the purpose of appellant, by his bill of exception, to preserve a record of the proceedings had before the court when said instruments were offered in evidence, but in this he signally failed, the bill showing only that the above instruments were offered in evidence by the appellees, and, without the statement that any objection was made thereto by appellant, the bill proceeds:

"For the reason that title demanded by defendant from plaintiff was not filed in the time demanded in notice to file abstract of title, said abstract having been filed more than a year after notice to file had been served upon plaintiffs: that no extension of time to file was asked by plaintiff of the court and no lawful reason given by plaintiff for not filing said abstract in the time required by law."

It is simply a recital of the fact that said instruments were offered in evidence by appellees that a demand by appellant had been made upon appellees for the filing of an abstract of title, that same had been filed after the expiration of more than a year from the date notice to file had been served upon appellees. Therefore said bill is of no value as furnishing the basis for the assignment of error urged to the action of the court in admitting said instruments over appellant's objection.

[4] Hon. Bruce M. McMahan, an attorney at law, who had been employed by T. M. Cain, deceased, to look into the condition of the title to several tracts of land owned by him, was called as a witness by appellees, and, over timely and proper objection interposed by appellant, was permitted to testify to certain statements made by one Mrs. Fannie Lynch in a conversation said witness had with her in reference to the 100 acres of land in controversy, to wit, that he had a conversation with Mrs. Fannie Lynch about 1896 or 1897 at her home in Rains county, Tex., in which she stated that she had made a deed to T. M. Cain to the 100 acres of land in controversy in this cause; that he did not ask, nor did she tell him, the date of said deed, nor did she tell him before whom the deed was acknowledged, or what the consideration for the deed was; that he never saw the deed, and did not know anything about the deed, only what Mrs. Lynch told him; that she told him at the time that she and her husband had made a deed and delivered it to Capt. Cain.

The occasion for appellees' seeking to prove by parol evidence the execution of the deed alleged to have been executed by James Lynch and wife, Fannie Lynch, to T. M. Cain, conveying the land in controversy, was due to the loss of the original deed and the failure to place same of record.

Appellant objected to said testimony, on the ground that same was hearsay; that it was too remote, said conversation having been had some 25 or 26 years ago; because the witness admitted that he never saw the deed and did not know anything about it except what Mrs. Lynch told him; that it was not shown that said deed, if there was one, was ever acknowledged as required by law; that there was any kind of consideration for said deed; that it was not shown how the deed was delivered, if in fact it was delivered; and, further, that said testimony was not admissible for any purpose.

[5] It is contended by appellees that said testimony was properly admitted as a declaration against the interest of the said Mrs. Fannie Lynch. Mrs. Lynch was not, at the time of the making of said statements, the owner of the title in fee or in possession of the 100 acres of land in controversy under a claim of title, and the record does not show that she ever claimed the title to said property, or any interest therein, as against T. M. Cain or the appellees, asserting title thereto as the heirs of said Cain, from the time appellant became identified with said land up to the time of her death. Under the law, the effect of evidence showing an admission against interest is accomplished through the doctrine of estoppel. It is not a means of conveying title, but it operates to shut off what otherwise would be a successful defense to a claim of title asserted by one who, by reason of an admission against interest communicated to and acted upon by another, is estopped from gainsaying same to the detriment of the party who acted thereunder, and evidence of such an admission is not admissible as against the rights of others not claiming by, through, or under the party making the admission.

The evidence introduced for the purpose of establishing the admission against interest would certainly be admissible against Mrs. Lynch or her heirs, devisees, or donees, if either were before the court asserting claim of title to the property; but certainly is not admissible for the purpose of establishing the execution, contents, and delivery of a conveyance of title by Mrs. Fannie Lynch and husband, James Lynch, to T. M. Cain, for the purpose of showing the existence of title in appellees as the heirs of said Cain, to enable appellees to recover against appellant.

[6] In frankness and candor, the witness Mr. McMahan stated, in effect, that he did not know, and was not advised, as to the date of the deed, nor the officer before whom it was acknowledged; that he never saw the deed; that he did not know anything about the deed except what Mrs. Lynch told him.

If the witness had been in position to testify from a personal examination of the deed that he knew the contents of same, to wit, the parties thereto, the land conveyed, and the consideration recited in the deed, his evidence would have then been admissible for the purpose of establishing the due and proper execution and delivery of the deed by Lynch and wife to T. M. Cain, conveying the land in question. The evidence for this purpose falls short of the requirements of the law, in that, as above stated, the witness did not have any personal knowledge of the contents of the deed, his information in reference thereto resting solely upon the statements made by Mrs. Lynch. It is true, her testimony would have been admissible if given in her own proper person in the manner and form required by law, but her statements offered in evidence, although made, no doubt, just as testified to by the witness, comes within the rule of "hearsay evidence," therefore not admissible. Under the theory that the evidence was admissible to show an admission against interest, same is not hearsay, but original testimony, coming from the proper source, to wit, the party detailing as a witness the statements made to him by the party against whose interest the admissions were directly made. However, the admissions of Mrs. Lynch against her interest, although sufficient to estop her if she were asserting claim of title to the land involved, are not of any value for that purpose against the appellant who is not claiming under or through Mrs. Lynch, so as to be estopped by her admissions; appellant's claim of title to the land being based upon the statute of limitation of 10 years.

[7] Appellees Sam Cain, a son, and J. W. Ballew, a son-in-law, of T. M. Cain, deceased, were permitted, over appropriate objection, to testify to the following conversation alleged to have taken place between said T. M. Cain and appellant, to wit:

"I heard T. M. Cain ask R. P. Butler, defendant herein, if it was true he was cutting timber from his land up there, and Butler said it was not true, and Cain said, 'I did not think that of you, Peter, I did not believe it.'"

Which was objected to because said testimony sought to be introduced was by the heirs of T. M. Cain, parties to this suit and interested in the recovery in this case; therefore not permitted to testify to statements by or conversation with a deceased ancestor, unless called to testify thereto by the opposite party.

[8] While this objection should have been sustained, appellant is not in position to urge error on the ruling of the court because only part of the testimony of said witnesses was objected to detailing the conversation in reference to which they testified as having occurred between T. M. Cain, deceased, and appellant, the part of said conversation testified to by Sam P. Cain that was not objected to being practically the same as that objected to and more damaging, viz. that appellant said to T. M. Cain, deceased, "I do want to put a fence across up there to keep the stock from getting in there (referring to the 100 acres of land in controversy). It is just a catchway for all stock in there, and I want to put a fence in there and block it off to stop them from coming in there"; that said T. M. Cain replied, "Look after it and don't let the timber be cut off," and Mr. Butler agreed to that and said he would do it; and that part of the conversation testified to by the witness Ballew not objected to being as follows:

"During this conversation, Mr. Butler said he wanted to put up a string of fence (referring to the tract of land in controversy), that Mr. Rabb's cattle and other cattle were breaking through and tearing up the property and getting on his land, and he wanted to keep the cattle out, and Capt. Cain told him if he wanted to go up there on the line of his land and cut the bois d'arc posts, and if he would furnish the wire, he could put up the fence. At that time Mr. Butler did not say anything about laying claim to the land. He just wanted to protect himself from other people's stock. This was in 1912 or 1913."

In addition to the testimony of said witnesses objected to and that admitted without objection, Jim Settle, a witness for appellee, testified in effect to the same conversation as having occurred between appellant and T. M. Cain, deceased. Therefore this assignment is overruled.

[9] As to the title shown by appellant under his claim of ten years' statute of limitation, the evidence being sufficient to support the conclusion of the trial court, the finding of the trial judge on that issue against appellant is conclusive on this court.

[10] Notwithstanding appellees, under the holding of this court, failed to establish title to the land involved, should the judgment be affirmed because the evidence established that appellant's possession of the property was acquired from T. M. Cain, under such circumstances as to make appellant a tenant at will, thereby creating the relationship of landlord and tenant, whereby appellant was not in position under the law to put appellees, as heirs of said T. M. Cain, on the proof of title to the property in order to regain possession thereof? On this phase of the case, in addition to the testimony of the witnesses Sam Cain and J. W. Ballew not objected to, other witnesses testified as follows:

Jim Settle testified: That he worked for T. M. Cain in 1911 and 1912 in his store at Emory. That in 1911 or 1912 appellant came to Cain's store and told him that he wanted to build a fence on the land in controversy to keep cattle from getting on his land. (This 100 acres joined a 100-acre tract own-

ed by appellant.) He said if Capt. Cain would furnish the posts he would furnish the wire and build the fence. Capt. Cain told appellant to go ahead and cut the posts and put the fence through there and to look after the timber, that he did not want the bois d'arc timber cut off, and appellant told him he would take care of it and by putting this fence through there he would keep them out.

In addition to his testimony above referred to, J. M. Ballew testified:

"We heard that Peter was going to put up some kind of claim to it (referring to the land in controversy), so I went up to see Peter and called him out, and I said, 'Peter, we hear you are going to put up some kind of claim to this 100 acres of land.' And he said, 'It is all a mistake; I have got no more claim than I have always had; I am just taking care of it under agreement with Sam Cain after Mr. Cain died, like I always did.' That was after the partition. Then about a year after that Sam Cain and I went up and told Peter we would like to sell that land or lease it to him. Peter said he couldn't buy it, he didn't buy it. He said, 'In fact there is a question of title about this land and I am going to find out whose it is.' That was maybe one or two years after the partition. That was the first knowledge I had that Mr. Butler was asserting any right of ownership or title to the land."

John W. McElroy testified: That at the time the land in controversy was surveyed in 1917, when the Cain estate was being partitioned, appellant was asked whether he had any claim to the land. He said he did not. He said he had been merely looking after this land and using it, and that it was his wire across there (indicating a line of fence near a line of the land involved and located on it), and that appellant was told that was all right. He said he had been merely looking after it to keep any one from cutting timber off, and had had the use of the pasture. That appellant showed them the corners of said land.

S. P. Cain, a son of T. M. Cain, testified that, when his father's estate was partitioned in 1917, he was with the surveyor and commissioners who made the partition; that appellant went with them around the land sued for; that he had heard that appellant was claiming the land, and at this time asked him about it, and appellant told him that he had no claim whatever to that 100 acres; that appellant pointed out the corners of said tract of land and said, "There's Capt. Cain's land."

This evidence we think sufficient to show that appellant occupied the land in question in subordination to T. M. Cain's title and with his assent, at least implied, if not by express agreement. Francis v. Holmes, 54 Tex. Civ. App. 608, 118 S. W. 883. The evidence shows that appellant went to T. M.

Cain, deceased, asked for and obtained permission to build a fence on the land in controversy, and acquired the right to use it as a pasture. By this he recognized, if not Cain's ownership of the property by legal title, his right to the possession thereof. Cain agreed to let him build a fence and agreed to furnish the timber for the posts, but at the same time required him to protect the land against trespassers and to protect the bois d'arc timber on the land. This Butler agreed to do. The evidence shows there was no cross fence between Butler's land, on which he lived, and the land in controversy. The effect of this was to put the land into one inclosure and consequently into Butler's possession. The evidence was sufficient to show a tenancy at will. Lobit et al. v. Dolen et al. (Tex. Civ. App.) 231 S. W. 831; same case, opinion by Supreme Court, 262 S. W. 731; West Lbr. Co. v. Sanders (Tex. Civ. App.) 225 S. W. 828.

[11] Appellant, having obtained possession of the land in controversy by permission of T. M. Cain, is clearly estopped from questioning the title of appellees, who deraigned title thereto as the heirs at law of said T. M. Cain. This undoubtedly is true from the fact that appellant's possession was by permission of their ancestors, which was never repudiated by appellant until he was called upon to deliver possession to appellees. Therefore appellant is estopped under well-recognized rules of law from now questioning appellees' title. For a full discussion of the rules, see Wilson v. Beck et al., 286 S. W. 315, opinion by Associate Justice Looney of this court.

We are of the opinion that the motion for rehearing should be granted, the former opinion withdrawn, and the judgment heretofore entered, reversing and remanding the case, set aside, and the judgment of the court below affirmed, and it is so ordered.