## TEXAS CO. v. LEE et al.

### No. 5459.

Court of Civil Appeals of Texas. Texarkana.

Nov. 22, 1939.

Rehearing Denied Dec. 7, 1939.

H. R. Wilson, of Houston, for appellant.

Lee & Porter and Wynne & Wynne, all of Longview, for appellee.

WILLIAMS, Justice.

W. Edward Lee filed this suit in statutory form of trespass to try title including pleas of five and ten years' statutes of limitation, Vernon's Ann.Civ.St. arts. 5509, 5510, against The Texas Company and others for title and possession of 7/8 leasehold interest under a described 1.86 acre tract of land alleged to be located in the John Blair Survey in Gregg County. The names and disposition made of the other defendants are immaterial. The real contest was between plaintiff and The Texas Company, which answered with a general demurrer, plea of not guilty, general denial, and special pleas of limitation title.

The findings of fact and conclusions of law filed by the court sustained plaintiff's

contentions, namely: (1) That the strip of land in controversy was situated in the Northwest corner of the Blair Survey, and within the field notes of a larger tract conveyed by Thurmond and wife in 1904 to C. G. Strong and wife, Josie; (2) that the Strongs' possession of the land thereafter matured into a five year limitation title; and they were the owners of such title when they executed and conveyed a 7/8 leasehold estate covering 113 acres out of this survey to the Mid-Kansas Oil & Gas Company; and (3) through mesne conveyances plaintiff became the owner of the leasehold estate covering the strip in controversy.

Plaintiff introduced in evidence over objections of defendant certain documentary evidence among which were the following:

1. Patent from the State of Texas to John Blair.

2. Oil and Gas lease from C. G. Strong and wife to Mid-Kansas Oil & Gas Company, dated December 22, 1930.

3. Assignment of above lease to Tidal Oil Company dated July 29, 1931; recorded September 2, 1931.

4. Release of oil payment, Mid-Kansas Oil & Gas Company to Tide Water Oil Company dated February 28, 1934; recorded April 7, 1934.

5. Quitclaim deed from Marathon Oil Company, a corporation, and Tide Water Oil Company, to W. Edward Lee, dated March 27, 1936; recorded April 6, 1936.

The objection above urged and the exception to the court's findings, later detailed, are the basis of a proposition which reads: "In so far as concerns each of plaintiff's muniments of title, the instrument filed by the plaintiff on December 29, 1936, pursuant to defendant's demand, did not comply with the requisites of Art. 7378, R. S.1925, and therefore none of such muniments of title were admissible in evidence under the provisions of Art. 7377."

In response to defendant's demand, Article 7376, plaintiff on December 29, 1936, timely filed his "written abstract of title" containing twenty paragraphs, the first three of which pertinent to this proposition read:

"(1). Each and every of the instruments and plats contained in abstract No. 2897, compiled by Gregg Abstract Company, certificate dated 10:41 A. M., November 9, 1933.

"(2). Each and every of the instruments and plats contained in abstract No. 3764, compiled by Gregg County Abstract Company, certificate dated 7 o'clock A. M., April 29, 1936.

"(3). Each and every of the instruments and plats contained in Abstract No. 3769, compiled by Gregg County Abstract Company, certificate dated 7 o'clock A. M., May 25, 1936."

The other seventeen paragraphs relate to patents covering the adjacent Tennison and Brown Surveys, judgments, and oral testimony to be offered. At the same time plaintiff tendered and filed above abstracts with the papers in this cause.

In the findings of fact and conclusions of law, the court states:

"Each and every of the instruments offered in evidence by plaintiff as a claim of title were included in and a part of the written abstract of title filed by plaintiff."

"The abstract of title filed by plaintiff, * * * showed the nature of each written instrument intended to be used as evidence and its date, parties to, date of proof of acknowledgment, and before what officer the same was made, * * * where recorded stating the book and page of the record; * * * While the abstract filed by plaintiff contained full copies, and in most instances furnished more information than required by statute, yet it must be said that all the statutory requirements were complied with and defendants were fully apprised thereby in writing of the claim or title to the premises upon which the plaintiff relied, and * * * the requirements of the statutes were fully met."

It is apparent that the foregoing findings are grounded solely upon the data contained in the three abstracts. Defendant does not attack the foregoing on the ground that same was not disclosed in the abstracts, but contends that plaintiff in his "abstract in writing of the claim or title to the premises upon which he relied" should have therein specifically listed the muniments and given the date specified in Article 7378.

The abstracts were made a part of plaintiff's abstract in writing of his title upon which he relied. The abstracts so filed have not been brought forward in this record. We are not advised as to the size or contents of either, other than what is disclosed in above-quoted findings of fact. The abstracts may have included other documentary evidence not introduced in the trial, but did include all the instruments which were introduced. Not only the data requir-

ed in Art. 7378, but also the full contents of each instrument were furnished. Defendant does not claim to have been misled. The record does not intimate that the procedure used operated as a "smoke screen" to hide or becloud the chain of title upon which plaintiff relied. The evident purpose of Article 7378 and its related articles 7376, 7377, and 7379, is to furnish the adversary the list of documentary evidence that will be introduced against him, with such additional information as will enable him, by investigation of the book and page of the records, to ascertain the exact character of the instruments relied upon, and thereby enable him to prepare his defense as against the evidence which he is thus informed the other party will adduce upon the trial, Coler v. Alexander, 60 Tex.Civ.App. 573, 128 S. W. 664; Butler v. Duffey, Tex.Civ.App., 288 S.W. 598, and thereby affording the adversary all the advantages that would be afforded by special pleading. Anderson v. Anderson, 95 Tex. 367, 67 S.W. 404. We therefore conclude that the "abstract in writing of the claim or title" filed by plaintiff meets the requirements of Article 7378.

Plaintiff sought to connect himself with such title as Strong and wife may have acquired. There was no common source of title. In considering the next proposition we shall assume that the land was situated in the John Blair Survey and the Strongs' possession had ripened into a five-year limitation title on December 22, 1930. On this date the Strongs conveyed a 7/8 leasehold estate to the Mid-Kansas Oil & Gas Company which in turn on July 29, 1931, assigned to the Tidal Oil Company, an Oklahoma corporation. In 1936 Tide Water Oil Company, an Oklahoma corporation, joined by the Marathon Oil Company, quitclaimed to plaintiff all their title and interest in the 1.86-acre tract in controversy. In this deed appears this recital: "To have and to hold the above described premises * * * unto the said W. Edward Lee, his heirs and assigns forever, so that neither Marathon Oil Company (whose corporate name was formerly Mid-Kansas Oil & Gas Company) nor Tide Water Oil Company, nor their successors, * * * claim or demand any right or title * * *."

Plaintiff introduced in evidence a release of oil payment from Mid-Kansas Oil & Gas Company to Tide Water Oil Company. This instrument refers to the assignment of the leasehold estate by it into the Tidal Oil Company, giving reference where recorded. The concluding two paragraphs read:

"Tidal Oil Company, Party of the Second Part, the assignee in said instrument, has by an amendment to its Articles of Incorporation changed its name to and is now Tide Water Oil Company, an Oklahoma corporation.

"Now, Therefore, in consideration of the premises, and for value received, Mid-Kansas Oil and Gas Company does hereby acknowledge that it has received from Tide Water Oil Company full payment of the said sum of One Million Dollars, and does hereby fully release and discharge Tide Water Oil Company (formerly Tidal Oil Company) of and from all obligations with reference thereto, and also, the said Mid-Kansas Oil and Gas Company does hereby release and discharge the lien reserved by it in the assignment above mentioned, to secure it in the payment of said sum of One Million Dollars."

Neither the deed nor the release was an ancient instrument. Defendant was a stranger to both. As such, defendant asserts the recitals quoted above were hearsay and wholly incompetent to establish title out of Tidal Oil Company into Marathon Oil Company and Tide Water Oil Company, through and under which plaintiff sought to deraign title to the land in controversy. Our observations will be confined to the Tidal Oil Company. In support of this proposition, defendant cites and discusses the text in 17 T.J. Sec. 211, p. 520, and the holdings in Orr v. Armstrong, Tex.Civ. App., 81 S.W.2d 710, writ refused; Teagarden v. Patten, 48 Tex.Civ.App. 571, 107 S.W. 909, writ refused; McCoy v. Pease, 17 Tex.Civ.App. 303, 42 S.W. 659; Lancaster v. Snider, Tex.Civ.App., 207 S.W. 650; Ward v. Forrester, 35 Tex.Civ.App. 319, 80 S.W. 127; Stockley v. Cissna, 6 Cir., 119 F. 812; and Henry v. Phillips, 105 Tex. 459, 151 S.W. 533. In these cases, the rejected recitals of the deeds sought to bridge a gap in the chain of title by either showing (1) A lost deed; (2) heirship, which involves the passing of title by descent and distribution; or (3) that the grantor as the surviving wife or child was the sole heir of the deceased prior grantee. Such is not the effect of the recitals here challenged, but rather a question of identity.

In Haney v. Gartin, 51 Tex.Civ.App. 577, 113 S.W. 166, writ refused, A. W. Newlin bequeathed the land in controversy to his wife, Mary E. Newlin. Thereafter a deed was executed by F. J. Kurtz and Mary E. Kurtz to F. Butterfield, purporting to con-

vey same. This deed, which was not an ancient instrument but in chain of title, recited that Mary E. Kurtz was formerly Mary E. Newlin. The court held that this recital, without other evidence of its truth, and even as against strangers to the title, is competent evidence on the issue of identity which was involved. The conclusion thus reached was grounded upon the holdings in Chamblee v. Tarbox, 27 Tex. 139, 84 Am.Dec. 614, which held that recitals of similar import came within an exception to the hearsay rule in that such recitals dealt with pedigree. The Chamblee case has been followed in Auerbach v. Wylie, 84 Tex. 615, 19 S.W. 856, and Russell v. Oliver, 78 Tex. 11, 14 S.W. 264. The holdings in above cases were discussed and recognized in Dittman v. Cornelius, Tex.Com. App., 234 S.W. 880, where recitals in ancient instruments, not in the chain of title, were held to be competent evidence in that same dealt with the history or pedigree of a grantor on the question of identity.

 Change of name by marriage may be likened unto a corporation which has changed its name by an amendment to its charter. In the Haney case, supra, if Mary E. Newlin married Kurtz, which the court concluded from the recitals did happen, she merely changed her name, and such change of name did not affect her ownership of the property which passed into her under the will. The same can be said of Tidal Oil Company. Its change of name to Tide Water Oil Company did not take from it title to the property conveyed to plaintiff. The recitals in the release that Tidal had changed its name by an amendment to its charter (and the act of the parties dealing with it as such), in the absence of any controverting evidence or of any circumstances to cast any suspicion upon the trustworthiness of such recitals, involved the question of identity and came within an exception to the hearsay rule. The recitals would not be classed as self-serving. The "best evidence" rule was not urged. The court's finding of fact that plaintiff "deraigns his title from and through a consecutive chain of conveyances out of C. G. Strong and wife" is sustained.

The Strongs went into possession of a part of the 113 acres in 1904 under a deed recorded that year which described the boundaries of that tract. They cleared and fenced a part from time to time, remaining in possession until the trial; and paid taxes before delinquency for five consecutive years. Strongs' possession matured into a five-year statute of limitation title and included the strip in controversy if it was situated within the Blair Survey.

Defendant contends that the strip in controversy is situated within the Scott Survey and included within the field notes of an oil lease owned by it. The field notes in the Blair patent call for the same bearing trees, namely, two red oaks, at its Northwest corner, as called for in the field notes in the Mary Scott patent for her Southwest corner. Extensive and detailed evidence of surveyors, surveys, natural objects in the vicinity, and lay witnesses was offered by the respective litigants to establish above corner in the absence of the two bearing trees to mark the corner. It would serve no purpose to detail the facts testified to with reference to this issue, for the same presents a question of fact. There is competent evidence to support the court's findings as to the location of this corner, and that the strip in controversy was situated within the John Blair H. R. Survey.

The judgment of the trial court is affirmed.